Yes, Your Honor. Good morning, and may it please the Court, Jonathan Ferenc Berk on behalf of the appellant, Kirstin Sconiers. Your Honors, the question for this Court is whether, under this Court's decision in Boxer X, as modified by the Supreme Court's decision in Wilkins, a summary judgment is appropriate when the plaintiff has submitted a sworn affidavit that states that the defendant quote, forced a finger into his anus. Your Honors, that is a use of force that is repugnant to the conscience of society. It can have no legitimate penological purpose, so summary judgment was not appropriate here. So, there's... Can I just ask you a factual question? There was an affidavit that, in the state case, right, was there an affidavit that he pled guilty to? Yes. Okay. Was that affidavit incorporated as a factual basis for the guilty plea? I do not believe so, Your Honor. Okay. I just was wondering. Right. I didn't see that it was, but I just was wondering. The charging documents in the record at Docket 78-1, it states that he obstructed or opposed Officer Lockhart without violence. Right, that's the argument, but he pled guilty at some point, and there's, you know, there has to be a factual proffer of the basis of guilt, and so I was just wondering, I can't tell from looking at the record, and maybe it's not a part of the record, and that's why, and that answers the question, but I'm wondering if it is a part of the record, what the factual basis that was offered was for the guilty plea? Your Honor, to the extent that I know it, it's just that he failed, Mr. Skoniers failed to clear the Rovers area. If there was further basis, I'm not aware of it being in the record. I guess the problem for you is it was really incumbent upon the state to establish, if it wants to raise the collateral estoppel or heck kind of defense, it was incumbent upon them to establish what the factual basis for that conviction was, and not your burden, right? That's right, Your Honor. Of course, I know you were appointed on appeal, is that right? Yes, Your Honor. But not your client's burden. Correct, Your Honor. And not only not your client's burden, but it's not a part of the record as far as you are aware anyway. As far as I am aware standing here today, that's correct, but just to be clear, even if there were collateral estoppel issue or a heck issue, that has no bearing on the sexual assault claim. It might have a bearing on some of the genesis of the excessive force claim generally, but not on Mr. Scania's sexual assault claim. Other than the sexual assault, you also had some other issues involving the application of the pepper spray, the application of the taser as to McNeely, and the takedown. For example, on the takedown, are you saying that some of her judgment was inappropriate with respect to the takedown? Your Honor, I just want to clarify. The taser issue is actually part of the second incident as to which this Court has already ruled. Yeah, and you're not, yeah, so that's out of the case, right? The taser is out. It's just the first part. Correct, yeah, we're just talking about the first part that happened right after the attorney conference visit. And it is our, it's our position that summary judgment was inappropriate as to the entire application of force after the attorney-client visit. And the pepper spray, the takedown, and the sexual assault, is what you say, what the district court was basically weighing the evidence, right? Yes, Your Honor, and Mr. Scania submitted a sworn affidavit. It was detailed. It was consistent with his sworn amended complaint, and the district court essentially weighed the evidence and shouldn't have done that under Anderson. Well, on the on the takedown, didn't the, didn't your client under oath state that he got on the floor after pepper spraying him and and he complied with that order? There is one spot in the record where he did state that, Your Honor. How do you, how do you comply with the order and then say that you were, there was a takedown? How do you do both things at the same time? Well, Your Honor, I think Officer Lockhart himself says that there was a takedown. So, to the extent that my client said at one point that he got on the floor, I think in the totality of the record, that should still be viewed as a, as an, as an application of force to my client. Even though he admitted it, that he, that he complied? I think, Your Honor, there is one, one part of the record where he does say that he got down on the floor. However, he's otherwise consistent that he was taken to ground, and that's what Officer Lockhart says. Focusing on the sexual assault, Your Honors, Boxer X sets out a I mean, I guess your position is we're required at this stage to take his affidavits, and if they can be reasonably read together in a way that supports his complaint, we're obliged to do so. Yes, Your Honor. As to the sexual assault claim, Boxer X sets out an objective versus subjective test, and the objective prong as articulated in Boxer X requires that there be more than de minimis injury. Our position is that that has been abrogated by the Supreme Court's decision in Wilkins. Other circuits, we cite Ricks v. Stover, that's the Third Circuit, have moved towards a more holistic analysis focusing on the nature of force. The Supreme Court said that that's now the core judicial inquiry, so our position is that Boxer X, that objective prong, can't be applied so strictly. Your Honor, and focusing briefly on one factual issue, the District Court's decision at pages 2 to 3 appeared to rely very heavily on this inference that Mr. Scogners was wearing pants when he was sexually assaulted. To be clear, Your Honor, that was not a position argued by the defendants below. Some in the District Court did sua sponte. We believe that that was a reasonable inference that should have been drawn in Mr. Scogners' favor, but even to the extent that it wasn't a reasonable inference, the defendants themselves below offered an interview of my client, a sworn interview by an investigator, which my client explained that his pants were kind of down, that he was wearing large pants, and my client is not a large guy. He's 5'8", 137, according to medical records. And that he wasn't wearing underwear, right? And he was not wearing underwear, Your Honor. If there are no further questions, I'll save my time for rebuttal. Okay, well then we'll give you a total of seven because you had already reserved three. Yes, Your Honor. Hold on one moment, Mr. Green. So what's that buzzing sound that we keep getting? Valerie? Okay, okay. Oh, that might be it. Okay, it's off. All right, Mr. Green, sorry about the delay. John Green representing the officer. Your Honor, we have a red suit inmate who had a prior sexual history and who was a serving time for exposure of sexual organs. He had a violent past. He was required to be manacled and chained and escorted by two officers when going from one location to another. We do have two different areas that really are in dispute at this point. One is the use of the pepper spray, the escorting or takedown to the floor, and cuffing and then being taken in to have the pepper spray removed. The other issues have been found to be without any merit and abandoned on appeal. So I'll just address these issues. The determination by as a result of the plea that he made to interfere in with the actions of an officer. Let's talk about that. Go ahead. The problem I have with that is that there's no factual basis that is alleged in his complaint on this case. That's the problem. That's why I was asking opposing counsel about that because I couldn't find anything in the record. The charges themselves don't do it. Well, the charges do show and the plea shows it goes to this event. Well, it goes to this event but that doesn't mean that excessive force wasn't used in arresting him or taking him down for this particular event. In other words, it's not necessarily inconsistent that he both did something that was that he shouldn't have done and that your client used excessive force in arresting him for that conduct. It may not but there also for there to be excessive force there needs to be number one some culpability in the mind of the officer. Hold on just one second. If we're talking about collateral estoppel, we need to know what happened, what it was specifically that he pled guilty to, right? We need to have the facts of what happened and then we can line those up with what he's alleging in this case and see if there are any inconsistencies. But if you're telling me, as I think the clear in the record, then I think we have to move on to a different argument. Well, the record reflects that the his actions at the point in time that he was taken down was interference, resulted from an interference with the officer and the course and scope of his work. So that's not a question. Now the details of it as set forth in the arrest warrant upon which the information was based that he pled, that, all of those facts are not there. The problem is that the arrest warrants, there's nothing as I can tell in this record to establish that the for the conviction. All of the detailed facts are not part of that record. Yeah. But the plea to interference with a law enforcement officer does come. That's the point Judge Rosenbaum was making. That does come, though, from the interaction with Lockhart. Yeah, I mean, but you can have cases where you don't have a heck bar where, for example, there was probable cause to support an arrest, but there was nevertheless the use of excessive force. I agree with that. Right. And in the absence of a factual basis for the plea, in this instance, I don't know how we can say that the conviction necessarily bars his claim of excessive force. If there is interference with the officer, then the benefit of the doubt as to how to handle the situation generally goes to the officer unless there is evidence that the officer has used excessive force, had a malicious... He alleges that he did use excessive force. You know, Mr. Green, it just doesn't seem to me that this can be resolved on summary judgment. Well, the use of pepper spray is a minimal force that has been approved. The takedown, there is no evidence that there was any injury as a result of that. He was taken immediately to decontamination where he remained for 15 minutes. There is nothing to indicate. We've said the use of pepper spray is excessive, quote, in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there's no threat to the officers or anyone else. And when you read his several affidavits, you can certainly read it as being consistent with the view that, given what we've said, that the use of pepper spray here was excessive. You've got the affidavits of two control tower officers and two officers on the ground. Yeah, but we can't credit them over his affidavit at summary judgment, can we, when there is dispute? There still has to be, for excessive force, either malice on the part of the officer or a showing of as a result of the takedown, or the use of pepper spray. This is both minimal... You don't have to have injury. If the circumstances don't warrant the use of pepper spray, our precedents say that the use of pepper spray can be excessive force, right? There are circumstances where it can be excessive force. Here, we've got essentially one burst of contaminated. He has pled that he has resisted an officer. Now, the details of that resistance, I agree, are not in the record that I am aware of. But still, you do not have any injury, any evidence of any malice on the part of the officer, or anything to indicate that what he did was excessive. If we credit his affidavits, I think you could reasonably infer that there was malice, and that it was excessive. If you believe the affidavits, you would. That's the problem. We have to believe the affidavits. His affidavit is varied. The last affidavit that he gave indicated that he went down to the floor essentially voluntarily. You can read the affidavits as inconsistent, but you can also read them in a way that makes them consistent. And we're required at this stage, right, to read them in the light most favorable to his client, right? Unless the evidence is so strong that no reasonable jury could find against the officer. We have a video of that? You do not have a video of that one. You had a video of the one that now has been deemed frivolous, but there is no video of this one that we have. And then the second aspect of it, which I consider to be the more serious of the two, is of course the anal penetration, which is denied by the officer, denied by the control tower officers, and the other officer. But then we have a question of fact. I mean, that's the problem there. Well, again, every question of fact does not create a jury issue. Well, but that seems to me like it would be a pretty material question of fact. I mean, why wouldn't that be a material question of fact? Well, under the Boxer case, for instance, Boxer X case— It's been abrogated, really, by Wilkins, hasn't it? I think it's still available. I think it's still law. But it does provide— So far as it says that you would have to have at least a de minimis injury, it is inconsistent with what Wilkins says. I mean, Wilkins really does abrogate that, doesn't it? There is some inconsistency. But I still suggest to the court that in this particular case, we've got the testimony that nothing occurred. We've got a situation where the inmate is seen initially after all of this by medical during the time that he is in the restraint chair. He's an inmate that has refused psychiatric medication. When his restraints are checked by medical, there's no complaint of any problem with his rectum. Two other times that day, he is seen, there is no complaint. On February the 15th, he's distressed over the fact that he's facing 40 years in prison. And at that point, he starts eating feces and smearing feces. And it's really not until about three weeks later that we have any report that he is contending that Lockhart inserted his finger up his rectum. Immediately upon that report being made, the supervisory officer went ahead and took a statement and immediately sent him down to medical for examination. And at that point in time, they did examine him and they found no evidence of any injury. And the only thing abnormal they found was that he had an external hemorrhoid. Now, as far as his statements as to what occurred, when he is explaining all of this, he is indicating that he was wearing clothes that were too big for him. The one in his size had not come in. And during what he considers to be a incident, I would suggest to you that under the circumstances, there could be contact incidental to taking control of him that could, from an external hemorrhoid, have caused him discomfort. But if he legitimately thought that the officer had done something wrong, then he had plenty of opportunity for two to three weeks to go ahead and tell medical. He's in suicide prevention at that point in time, and he takes no effort to go ahead and tell anybody until all of this is over. And at this point, he goes ahead and decides to make the statement that this assault occurred. But here's the problem. We'd have to then disbelieve what he has alleged in his affidavit. That's the problem. You understand that? I do. We can't say that it's facially absurd or ridiculous. There's nothing that he's alleged that we can look at and say, oh, this couldn't have happened. Doesn't contravene the laws of nature. Yes, Your Honor. That's the problem, right? I mean, you've got a really good jury argument. Well, I don't believe that we need to go to a jury because of the fact that there's still a requirement that there be some proof of this. Otherwise, every time any inmate makes any statement, no matter how ridiculous, that I was injured or I was sexually assaulted, that that always invariably will create a jury trial. And that was the purpose. That's the point of the Seventh Amendment. You need more CCTVs. Well, that's a different issue also, Judge Moore. Mr. Green, I think we understand your case. Unless there's something else you really want to tell us.  Thank you. Thank you, Your Honor. Mr. Ferencberg, is there anything you need to clear up that we don't understand? Just one point, Your Honor. There's been some suggestion about credibility and the mental health of my client. I point this court to Skelly v. Oskaloosa County. It's a non-presidential case, but the court there said the district court erred in the veracity of his sworn affidavit. Other than that, we'd rest on our briefs. Thank you.  Is Mr. Blake? Um, that's a great question. Mr. Blake, I believe Mr. Kushner just stepped out for a moment. Oh, you're Mr. Blake. Okay. Mr. Kushner. Okay. Um, Valerie, maybe we need to find Mr. Kushner. Okay. I know you would. I mean, we can't have a little fun. Oh, Lord. How ironic. I don't want to give you the easy stuff. Oh, of course. Of course. Well, let's just hide. Never had this happen. He's okay. At least you're good. You know what? You can start now. Okay. Mr. Kushner, would you like to join us? Yes, sir. Sorry about that. I walked out during the rebuttal. I thought I had a minute, so I apologize. You can't make assumptions around here. We like to get our business done. Absolutely. Judge Moore thought we ought to just go ahead and start.